IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| CURTIS HUNTER,<br><br>Plaintiff,<br><br>v.<br><br>RIVERBEND CORRECTIONAL FACILITY, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NO. 5:19-cv-491 (MTT)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER**

Defendant Steven Niergarth moves to dismiss Plaintiff Curtis Hunter's claims for failure to state a claim. For the following reasons, that motion (Doc. 21) is **GRANTED**.

**I. MOTION TO DISMISS STANDARD**

The Federal Rules of Civil Procedure require that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To avoid dismissal pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing Fed. R. Civ. P. 12(b)(6)). "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the

plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (internal quotation marks and citations omitted).  But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Wiersum v. U.S. Bank, N.A.,* 785 F.3d 483, 485 (11th Cir. 2015) (internal quotation marks and citation omitted).  The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).  Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts.  *Patel v. Specialized Loan Servicing, LLC,* 904 F.3d 1314, 1321 (11th Cir. 2018) (citations omitted).  However, when a plaintiff is proceeding pro se, her pleadings may be held to a less stringent standard than pleadings drafted by attorneys and will be liberally construed.  *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

## II. DISCUSSION

### A. Facts

Hunter is a former inmate at Riverbend Correctional Facility and alleges that on December 10, 2017, he injured his knee during a fight in his dormitory.  Doc. 30 at 4-5.  He alleges he was then placed in administrative segregation, where he received no medical care until January 4, 2018.  *Id*. at 5-6.  He was finally sent to the prison's medical staff on January 4, 2018, and received X-rays on January 8, 2018.  *Id*. at 6.

On January 11, 2018, Hunter was sent to an appointment with Defendant Dr. Niergarth, a private doctor for Oconee Orthopedics, LLC.  *Id*. at 7.  Niergarth took X-rays and gave Hunter a temporary brace.  *Id*.  On February 9, 2018, Hunter returned to Niergarth, who ordered an MRI.  *Id*.  After the MRI, Niergarth told Hunter that "a tibial plateau ha[d] shattered and dropped off 7mm that requires a total knee replacement."  *Id*.  However, Niergarth told him that he was too young to have that procedure, because

they only last ten years. *Id*. Niergarth also asked that Hunter return the knee brace. *Id*. Hunter alleges that he has experienced continued pain and instability in his right knee and that the condition of his left knee is worsening because he is having to use it to compensate for his injured right knee. *Id*. He also alleges that he requires at least $57,000 to pay for physical therapy or rehabilitation. *Id*.

Hunter brought claims against the prison, prison staff, and Dr. Niergarth for deliberate indifference to serious medical needs in violation of the Eighth Amendment. *Id*. at 9. Niergarth now moves to dismiss, arguing (1) that he was not acting under color of law, (2) the claims are barred by sovereign immunity, (3) that Hunter fails to plausibly allege Niergarth exhibited deliberate indifference, and (4) that any state law negligence claims fail.[1]  *See generally* Doc. 21-1.[2]

**B. Analysis**

    1. Color of Law

First, Niergarth argues that "Hunter's claim under 42 U.S.C. § 1983 fails to allege any facts to show that an 'outside treating' orthopedist such as Dr. Niergarth is a government official acting under color of state law." Doc. 21-1 at 10. Notably, Niergarth does not argue this as a legal point, but a factual one. His brief does not mention any relevant law or standard for determining when someone is acting under color of law.

Liberally construed, Hunter's complaint alleges that officials at Riverbend, in the exercise of their duty to provide Hunter with medical care, scheduled an appointment with Niergarth. As a factual matter, that is enough. If Niergarth had made any legal

---

[1] Niergarth also argues that Hunter "wholly fails to demonstrate a causal connection between Dr. Niergarth's alleged indifference and Plaintiff's injury." Doc. 21-1 at 11. But he provides no analysis or support for that one-sentence argument, so the Court does not consider it.

[2] Niergarth also argues that the complaint fails to state a claim for negligence. However, as the Court has previously noted, Hunter withdrew his negligence claims. Although he has filed two amended complaints, neither the first nor second contain negligence claims. *See* Docs. 15 at 7 (screening Hunter's first amended complaint); 39 at 2 (construing second amended complaint).

arguments or provided any authority addressing the status of outside physicians, the Court would consider those arguments.[3]  But Niergarth did not, and he fails to show the claims against him should be dismissed on that ground.

2. Sovereign immunity

Second, Niergarth argues that Hunter "only seeks damages against Dr. Niergarth in his official capacity, which is barred by sovereign immunity."  Doc. 21-10 at 10 (citing *Edelman v. Jordan*, 415 U.S. 651, 658 (1974)).

That argument is baseless.  In his first amended complaint (the one in effect when Niergarth filed his motion), Hunter stated that "Dr. Steven Niergarth is the outside treating orthopedic who diagnosed Plaintiff Right Knee as in need of a Total Knee Replacement . . . *He is being sued in his individual capacity and his official capacity* for his role in conspiring with Riverbend to not treat plaintiff."  Doc. 9 at 2 (emphasis added).  The second amended complaint did not change that.  Niergarth offers no support for his statement that Hunter did not bring individual-capacity claims, and that statement is clearly mistaken.

3. Deliberate Indifference

Third, Niergarth argues that Hunter failed to plausibly allege he was deliberately indifferent to Hunter's knee issue.  Doc. 21 at 11.  "A prisoner's Eighth Amendment right against cruel and unusual punishment by prison officials includes the right to be free

---

[3] By contrast, Hunter did include authority in his brief.  Doc. 45 at 1.  He cites to *West v. Atkins*, 487 U.S. 42, 54 (1988).  In that case, a consulting outside orthopedist under contract with a state-prison hospital to provide part-time treatment was held to be an official acting under color of law.  The Court does not necessarily find the facts of this case perfectly analogous to that one; rather, the point is Niergarth's cursory, unsupported argument provides no basis for granting his motion on color-of-law grounds.

In his reply brief, Niergarth responds by arguing he did not have a "medical service contract with Riverbend Correctional Facility and/or Riverbend Medical Department."  Doc. 35-2 at 2.  Even assuming the truth of Niergarth's contention that he treated Hunter without any form of contractual agreement with the Geo Group, he does not explain how that sort of factual argument is relevant at the motion to dismiss stage.

from deliberate indifference to serious medical needs." *Stewart v. Lewis*, 789 F. App'x 825, 828 (11th Cir. 2019) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

To state a claim for deliberate indifference to a medical need, the plaintiff must allege: (1) he had an objectively serious medical need; (2) the official was deliberately indifferent to that need; and (3) the official's deliberate indifference and the plaintiff's injury were causally related. *Hinson v. Bias*, 927 F.3d 1103, 1121 (11th Cir. June 14, 2019).

A plaintiff can show that the prison official acted with deliberate indifference by proving that the official (1) had subjective knowledge of a risk of serious harm and (2) disregarded that risk (3) by conduct that is more than mere negligence. *See Brown v. Johnson*, 387 F.3d 1344, 1351(11th Cir. 2004) (citation omitted).  The plaintiff must plausibly allege that the defendant's response was "poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (quotations omitted).

Hunter fails to plausibly allege that Niergarth acted with deliberate indifference. Taking Hunter's allegations as true, Niergarth saw him on three occasions.  During the first visit, Niergarth took X-rays of his leg and gave him a stabilizer brace but refused Hunter's request for an MRI.  Doc. 30 ¶ 18.  Hunter does not claim that the X-ray missed anything an MRI would have revealed or even that an MRI was the appropriate diagnostic measure.  At the most, Hunter alleges "a simple disagreement over a diagnosis or course of treatment," but such disagreements do not constitute deliberate indifference.  *Chatham v. Adcock*, 334 F. App'x. 281, 288 (11th Cir.2009).  Further, Niergarth's ordering X-rays and providing him a knee brace are inconsistent with deliberate indifference.

On the second visit, roughly one month later, Niergarth ordered an MRI.  Doc. 30 ¶ 19.  On the third visit, roughly a month after the second, Niergarth allegedly diagnosed him with a severe tibial plateau injury that could only be fixed by total knee replacement.  *Id*. ¶ 21.  However, Niergarth told Hunter he was too young for a total knee replacement because they only last about ten years.  *Id*.  Niergarth also "took the stabilizer brace back" and "fail[ed] to give Hunter a medical knee brace to keep the injury from getting worse."  *Id*.  Hunter alleges Niergarth should have referred him for a second opinion and given him a medical knee brace.  *Id*. at 9.

Hunter does not allege facts indicating a second opinion was warranted, and Niergarth's conclusion that a total knee replacement was not indicated appears to be nothing more than an exercise of professional judgment.  That does not rise to the level of deliberate indifference.

### 4. Putative Negligence Claims

Finally, Niergarth argues that any state law medical negligence claims fail.  *Id*. at 12-13.  At the time Niergarth filed his motion, Hunter had filed his first amended complaint.  In its order screening that complaint, the Court noted Hunter appeared to have withdrawn his negligence claims.  *See* Doc. 15 at 5.  However, the Court noted that if Hunter wished to file a negligence claim, he could file a second amended complaint "incorporating all claims he intends to pursue."  *Id*.  Niergarth moved to dismiss before Hunter filed his second amended complaint, which also did not include any negligence claims.  In that context, the Court understands why Niergarth's brief addressed any potential negligence claims.  He is correct that the first amended complaint "does not describe the duty owed him by Dr. Niergarth under the circumstances[,] . . . fails to allege any actions of Dr. Niergarth that fell below the standard of care and amounted to a breach of the duty owed him[,] . . . fails to allege

causation, . . . [and fails to] describe any injury he sustained as a result of Dr. Niergarth's actions or inaction." Doc. 21-1 at 12-13.  Hunter's second amended complaint does not remedy those deficiencies; he still fails to allege a medical negligence claim.

In its order granting Hunter's motion to amend, the Court found the second amended complaint "does not include any state-law negligence claims." Doc. 39 at 2.  It is perhaps a fine line between (i) finding the complaint does not even raise a putative negligence claim (as the Court did) and (ii) finding that a putative negligence claim should be dismissed for failure to state a claim (as Niergarth argues).  But the Court continues to believe Hunter's second amended complaint simply did not include any putative negligence claims in any form.

### III. CONCLUSION

For the reasons noted, Defendant Niergarth's motion to dismiss for failure to state a claim (Doc. 21) is **GRANTED**, and Hunter's deliberate indifference claim and, to be safe, any possible negligence claim, against Niergarth are **DISMISSED** without prejudice.

Because all motions to dismiss have been resolved, the stay on discovery is **LIFTED**.

**SO ORDERED**, this 1st day of December, 2020.

S/ Marc T. Treadwell<br>
MARC T. TREADWELL, CHIEF JUDGE<br>
UNITED STATES DISTRICT COURT